UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
MIDLAND STATES BANK,                                :
                                                    :
                        Plaintiff,          :   Case No. 25-cv-1025
      -against-                                  :
                                                    :   **COMPLAINT**
NORDICA BAY, LLC, and CHARLES E. LEE,               :
                                                    :
                        Defendants.        :
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

      Plaintiff Midland States Bank ("**Midland**" or "**Plaintiff**"), by and through its attorneys, Armstrong Teasdale LLP, as and for its Complaint against Defendants Nordica Bay, LLC, ("**Nordica Bay**") and Charles E. Lee ("**Lee**" collectively with Nordica Bay, "**Defendants**"), respectfully alleges as follows:

## NATURE OF THE ACTION

      1.    This is an action for the recovery of unpaid principal and interest on a Loan to Nordica Bay and held by Plaintiff. In sum and substance, Plaintiff is the owner and holder of a Loan to Nordica Bay whereby Nordica Bay agreed to repay the Loan with any interest and fees by a certain Maturity Date. Obligations of Nordica Bay under the Loan Documents are guaranteed by Lee. Nordica Bay failed to pay the amounts required under the Loan Documents when they matured. Plaintiff has been injured by Nordica Bay's default and is entitled to collect—from both Nordica Bay pursuant to the Note and Loan Agreement (as modified by the Loan Extension Agreements) and Lee pursuant to the Guaranties—not only the unpaid principal, interest and fees, but also attorneys' fees, costs, and disbursements incurred in this action pursuant to a prevailing party attorneys' fee clause contained in the Loan Documents.

## **PARTIES**

2. Plaintiff is an Illinois banking corporation authorized to invest and loan money to borrowers for financing, with its principal place of business in Illinois.

3. Upon information and belief, Defendant Nordica Bay is a limited liability company with its principal place of business at 150 E. Palmetto Park Road, Suite 800, Boca Raton, Florida 33432. Upon information and belief, it is wholly owned by Nordica Bay P, LLC, which is a limited liability with its principal place of business at the same address. Upon information and belief, Nordica Bay P, LLC is wholly owned by Nordica Bay I, LLC, which is a limited liability with its principal place of business at the same address. Upon information and belief, Nordica Bay I, LLC is owned by Puetz Investments, Inc. (a California corporation with its principal place of business in California), Grover Lee (a citizen of the State of California), the Christine Schaffer Revocable Living Trust (established in California), the Jacqueline C. Lee Living Trust (established in California) (together with the Christine Schaffer Revocable Living Trust, the "**Trusts**"), Lee/Stanford Ranch Building A, LLC, and Starka Holdings, LLC. *See* Exhibit A, Loan Agreement at Schedule 3.14. Upon information and belief, Starka Holdings, LLC is wholly owned by Lee. *Id.* Upon information and belief, Lee/Stanford Ranch Building A, LLC, is owned by Lee, Grover Lee, Christine Schaffer, and Jacqueline Schaffer. *Id.* Upon information and belief, the members and/or trustees of the Trusts are residents and citizens of California and Florida. Upon information and belief, Lee and Christine Schaffer are natural persons and residents and citizens of Florida. Upon information and belief, Grover Lee and Jacqueline Schaffer are natural persons and residents and citizens of California.

## JURISDICTION & VENUE

4. Jurisdiction exists under 28 U.S.C. § 1332 by virtue of complete diversity of citizenship between Plaintiff and Defendants and this matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

5. This Court has personal jurisdiction over Defendants and venue is proper pursuant to the Loan Documents. Specifically, the Loan Agreement provides, in relevant part:

> The parties hereto agree that the validity, interpretation, enforcement and effect of this agreement shall be governed by, and construed in accordance with, the laws of the state of New York, and the parties hereto submit (and waive all rights to object) to non-exclusive personal jurisdiction in New York County, the State of New York for the enforcement of any and all obligations under the Loan Documents, except that if any such action or proceeding arises under the constitution, laws or treaties of the United States of America, or if there is a diversity of citizenship between the parties thereto, so that it is to be brought in a United States District Court, it shall be brought in the United States District Court for the Southern District of New York or any successor federal court having original jurisdiction. Borrower and Guarantor hereby expressly waive any defense of forum non conveniens.

*See* Exhibit A, Loan Agreement at § 8.12; *see also* Exhibit B, Note at § 13(a).

6. This provision is enforceable under New York law as the consideration set forth in the Loan Documents exceeds $1 million.

7. Further, jurisdiction and venue exist because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

8. The Loan Documents are governed by and construed in accordance with the laws of the State of New York. *See* Exhibit A at § 8.12; Exhibit B at § 13(a).

## BACKGROUND

### The Loan Documents

9. On February 15, 2022, Nordica Bay and Bravo Bridge Fund, LLC, ("**Bravo**") entered into the Loan Agreement. A true and accurate copy of the Loan Agreement is attached hereto as Exhibit A.

10. On February 15, 2022, Nordica Bay and Bravo entered into a Promissory Note (the "**Note**"). A true and accurate copy of the Note is attached hereto as Exhibit B.

11. Under the terms of the Loan Agreement and Note, Bravo agreed to loan Nordica Bay a principal amount of $12,240,000 (the "**Loan**"). *See* Exhibits A and B.

12. Under section 1 of the Note, the parties agreed that the Loan is subject to an "Interest Rate" (as defined by the Note) per annum that is equal to the "Adjustable Rate" (as defined by the Note) in effect on the last day of the preceding calendar month, plus the "Margin" (as defined by the Note). *See* Exhibit B at § 1. The Loan is subject to an initial interest rate of 3.35%, which accrued from the date of the Note through March 31, 2022. *Id.* Thereafter, the interest rate is to be reset on the last business day of each month and effective on the first day of the next calendar month. *Id.* Effective immediately upon the occurrence of a default by Nordica Bay, the Loan becomes subject to the Default Rate (as defined by the Note). *Id.*

13. Section 5 of the Note provides the following agreement between the parties regarding late fees:

> **Late fees**. If any payment of interest or principal payable under this Note is not made within three (3) calendar days after the date on which such payment becomes due and payable (including applicable grace periods), Borrower shall thereupon automatically become obligated immediately to pay to Holder a late payment charge, for each month during which a payment delinquency exists, equal to the lesser of five percent (5%) of the amount of such payment or the maximum amount permitted by applicable law ("*Late Fee*") to defray the expenses incurred by Holder in handling and processing such delinquent payment and to compensate Holder for the loss of use of such delinquent payment.

Exhibit B at § 5.

14. Under section 2 of the Note, the parties agreed that, on March 1, 2024 (or on any earlier date on which the unpaid principal balance of this Note becomes due and payable, by acceleration or otherwise) (the "**Maturity Date**"), the outstanding principal balance, all accrued

4

and unpaid interest, and any Late Fees were due and payable by Nordica Bay, with the unpaid principal balance continuing to bear interest after the Maturity Date at the Default Rate until paid in full.  *See* Exhibit B at § 2.

15.  The Loan Agreement provides that the following constitutes an "Event of Default":

> The failure by Borrower to pay any installment of principal, interest or other payments due to Lender required under any of the Loan Documents within ten (10) days after the same becomes due; provided that no such ten (10) day grace period shall apply to failure by Borrower to pay the Loan Obligations in full on the Maturity Date, and such failure shall constitute an immediate Event of Default. . . .

*See* Exhibit A at § 6.1.

16.  The Loan Agreement contains the following provision regarding attorneys' fees and costs:

> If, at any time, a Default occurs, or Lender becomes a party to any suit or proceeding in order to protect its interests or priority in any collateral for any of the Loan Obligations or its rights under this Agreement or any of the Loan Documents, or if Lender is made a party to any suit or proceeding by virtue of the Loan, this Agreement or any Mortgaged Property and as a result of any of the foregoing, Lender employs counsel to advise or provide other representation with respect to this Agreement, or to collect the balance of the Loan Obligations, or to take any action in or with respect to any suit or proceeding relating to this Agreement, any of the other Loan Documents, any Mortgaged Property, Borrower, Guarantor or Manager, or to protect, collect or liquidate any of the security for the Loan Obligations, or attempt to enforce any security interest or Lien granted to Lender by any of the Loan Documents, then in any such events, all of the attorneys' fees arising from such services, including attorneys' fees for preparation of litigation and in any appellate or bankruptcy proceedings, and any expenses, costs and charges relating thereto shall constitute additional obligations of Borrower to Lender payable on demand of Lender.  Until paid, all such expenses, costs and charges shall bear interest at the Default Rate, and shall be secured by the Mortgage and other Loan Documents.

Exhibit A at § 8.3(b); *see also* Exhibit B at § 10.

17.  Additionally, the Note provides: "If judgment is entered against Borrower on this Note, the amount of the judgment entered (which may include principal, interest, fees, Late Fees and costs) shall bear interest at the Default Rate."  Exhibit B at § 13(p).

5

18.     In connection with and as contemplated by the Loan Agreement and Note, on February 15, 2022, Lee and Bravo entered into the Nonrecourse Carveout Guaranty and Payment and Performance Guaranty (collectively with the Nonrecourse Carveout Guaranty, the "**Guaranties**").  True and accurate copies of the Guaranties are attached hereto as Exhibits C and D.

19.     The Payment and Performance Guaranty provides, in part:

> Subject to limitations and provisions of Section 1(b) below, Guarantor hereby absolutely and unconditionally guarantees to Lender the full, regular and punctual payment and performance of the Loan Obligations of Borrower to Lender without demand by Lender.  Without limiting the generality of the foregoing, "***Loan Obligations***" is used herein in its most comprehensive sense to include all debts, obligations, duties, payments, actions, and indebtedness described in the Loan Documents [(as defined by the Payment and Performance Guaranty)], whether now or hereafter made, incurred or created, voluntary or involuntary, due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined, and regardless of whether there is any recourse with respect to any portion of such Loan Obligations [(as defined by the Payment and Performance Guaranty)] as against Borrower or any other party liable therefor.  In addition, Guarantor guarantees the full payment of, and agrees to reimburse Lender for, all actual and reasonable costs of collection incurred by Lender in enforcing the Loan Obligations and pursuing any remedies set forth in the Loan Documents and/or the Guaranty, including, without limitation, court costs and reasonable attorneys' fees (including, but not limited to, fees in any bankruptcy or appellate proceeding) (collectively, "***Enforcement Costs***").

Exhibit C at § 1.

20.     The Nonrecourse Carveout Guaranty provides that Guarantor guarantees the full and prompt payment of any Losses (as defined by the Nonrecourse Carveout Guarantee) for certain acts or omissions related to the Loan Documents and any and all enforcement costs incurred in enforcing the Loan Obligations (as defined by the Nonrecourse Carveout Guarantee), including court costs and attorneys' fees.  *See* Exhibit D at § 1.

21.     The Loan Agreement, Note, and Guaranties were assigned to Plaintiff by Bravo via a series of documents between Plaintiff and Bravo (the "**Assignment Documents**").  True and accurate copies of the Assignment Documents are attached hereto as Exhibit E.

22.     On March 1, 2024, Nordica Bay, Lee, and Plaintiff entered into a Loan Extension Agreement ("**First Loan Extension Agreement**").  A true and accurate copy of the Loan Extension Agreement is attached hereto as Exhibit F.

23.     On May 30, 2024, Nordica Bay, Lee, Bravo, Bravo Capital, LLC, and Plaintiff entered into a Second Loan Extension Agreement.  A true and accurate copy of the Second Loan Extension Agreement is attached hereto as Exhibit G.

24.     Under the First and Second Loan Extension Agreements, the Maturity Date of the Loan was extended to August 30, 2024, and Nordica Bay was required to pay the amounts outstanding on that date.  *See* Exhibit F at § 1; Exhibit G at § 2.

25.     On September 24, 2024, Nordica Bay, Lee, Bravo Capital, LLC, and Plaintiff entered into the Third Loan Extension Agreement (collectively with the First and Second Loan Extension Agreements, the "**Loan Extension Agreements**").[1]  A true and accurate copy of the Third Loan Extension Agreement is attached hereto as Exhibit H.

26.     The Third Loan Extension Agreement extended the Maturity Date of the Loan to October 15, 2024, and Nordica Bay was required to pay the amounts outstanding on that date.  *See* Exhibit H at § 1.

---

[1] The Note, Loan Agreement, Guaranties, Assignment Documents, and Loan Extension Agreements are collectively referred to herein as the "**Loan Documents**."

**Defendants' Breach of the Loan Documents**

27. Nordica Bay was provided with and accepted the principal sum of $12,240,000 under the terms of the Loan Agreement and Note.

28. The Note matured on October 15, 2024, and neither Nordica Bay nor Lee has made all required payments under the Loan Documents due at maturity.

29. As of January 24, 2025, Nordica Bay owes Plaintiff $12,106,491.62 in principal, and $328,811.16 in interest plus Late Fees under the Loan Documents.

30. On November 27, 2024, Plaintiff demanded Defendants pay to Plaintiff the outstanding principal amount and all interest and fees incurred to date. *See* Exhibit I, 11.27.2024 Letter to Defendants.

31. Defendants refused to comply with Plaintiff's demand.

## **FIRST CAUSE OF ACTION**
(Breach of Contract against Nordica Bay)

32. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

33. The Note and Loan Agreement (as modified by the Loan Extension Agreements) were properly assigned to Plaintiff and constitute valid and enforceable contracts between Plaintiff and Nordica Bay.

34. The parties accepted the terms of the Loan Agreement and Note, the parties received consideration pursuant to the Loan Agreement and Note, and the Loan Agreement and Note have definite and certain terms.

35. At all times, Plaintiff fully performed its obligations under the Loan Agreement and Note.

36. Under the Loan Agreement and Note, Nordica Bay agreed, among other things, to make payments on the Loan Agreement and Note in accordance with the terms of the Loan Documents. *See* Exhibits A & B.

37. To date, Nordica Bay has failed and refused to make complete payment to Plaintiff under the terms of the Loan Documents.

38. Nordica Bay is therefore in breach of the Note and Loan Agreement (as modified by the Loan Extension Agreements).

39. As of January 24, 2025, Nordica Bay owes Plaintiff $12,106,491.62 in principal, and $328,811.16 in interest plus Late Fees under the Loan Documents.

## SECOND CAUSE OF ACTION
(Breach of Contract against Lee)

40. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

41. The Guaranties (as defined herein) are valid and enforceable. *See* Exhibits C & D.

42. Pursuant to the Guaranties, Lee, under certain conditions as defined in the Guaranties, guaranteed to Plaintiff, the full and prompt payment of any and all indebtedness and obligations of Nordica Bay under the Loan Documents.

43. In reliance on the Guaranties, Plaintiff provided Nordica Bay with the Loan under the terms of the Loan Agreement and Note.

44. Nordica Bay has failed and refused to pay Plaintiff the amounts due and owing to Plaintiff under the terms of the Loan Agreement and Note.

45. Further, Nordica Bay is party to another lawsuit filed in this Court by Bravo for its failure to pay Other Indebtedness (as defined by the Loan Agreement). *See Bravo Mezz Fund,*

*LLC v. Nordica Bay, LLC, et al.*, 1:24-cv-06107-MKV (S.D.N.Y. 2024). For this and other reasons, Lee is in breach of the Nonrecourse Carveout Guaranty. *See* Exhibit D at § 1.

46. Nordica Bay's defaults under the Loan Agreement and Note has caused damage and losses to Plaintiff.

47. Despite demand, and although Plaintiff and its assignor complied with all obligations under the Loan Documents, Lee has failed and refused, and continues to fail and refuse, to pay the amounts due and owing by Nordica Bay to Plaintiff.

48. Consequently, Lee is in breach of the Guaranties.

49. As of January 24, 2025, Plaintiff has been damaged and sustained losses as a result of Lee's breach of the Guaranties, including in the amount of $12,106,491.62 in principal, and $328,811.16 in interest plus Late Fees under the Loan Documents.

## **THIRD CAUSE OF ACTION**
(Attorneys' Fees, Costs, Expenses, and Disbursements)

50. Plaintiff re-alleges and incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

51. Pursuant to the express terms of the Loan Documents, Plaintiff is entitled to recover its attorneys' fees, legal expenses, and costs incurred in instituting and prosecuting this action. *See* Exhibit A at § 8.3(b); Exhibit C at § 10; Exhibit D at § 2.

52. Plaintiff has incurred attorneys' fees, costs, and expenses in connection with the prosecution of this action.

53. Plaintiff is entitled to recover its reasonable attorneys' fees, costs, expenses, and any future disbursements incurred in the action in an amount to be determined at trial, but in no event less than $10,000.

WHEREFORE, Plaintiff respectfully requests that the Court enter an Order against Defendants and in favor of Plaintiff:

a. On Plaintiff's First Cause of Action for breach of contract, a money judgment against Nordica Bay in the principal amount of $12,106,491.62, and interest in the amount of $328,811.16 plus Late Fees through January 24, 2025, plus any additional interest (pre- and post-judgment) and Late Fees incurred thereafter;

b. On Plaintiff's Second Cause of Action for breach of contract, a money judgment against Lee for an amount to be determined at trial, but no less than in the principal amount of $12,106,491.62, and interest in the amount of $328,811.16 plus Late Fees through January 24, 2025, plus any additional interest (pre- and post-judgment) and Late Fees incurred thereafter;

c. On Plaintiff's Third Cause of Action, a money judgment against Defendants for an amount to be determined at trial, but in no event less than $10,000, for Plaintiff's reasonable attorneys' fees, costs, expenses, and disbursements incurred in this action; and

d. Granting Plaintiff such other and further relief as the Court deems just and proper.

Dated: February 5, 2025

ARMSTRONG TEASDALE LLP

By: */s/ Charles Palella*
    Charles Palella    #CP6642
    Christopher R. LaRose    (pro hac vice forthcoming)
    Abigail Twenter    (pro hac vice forthcoming)
    7 Times Square, 44th Floor
    212-409-4403
    212-409-8385 (facsimile)
    alolli@atllp.com
    clarose@atllp.com

ATTORNEYS FOR PLAINTIFF MIDLAND STATES BANK